### JOHN NOTHAF v. THE STATE.

#### No. 6748. Decided May 3, 1922.

**Assault to Murder—Assault and Battery—Charge of Court—Requested Charge Rule Stated.**

If there is evidence that no more was contemplated than an ordinary battery upon deceased, and that another upon an independent impulse or design killed the deceased, the court should charge affirmatively upon such theory, and inform the jury that if such was the purpose of defendant and that another besides the intent and purpose of defendant killed the deceased intentionally that the defendant will be guilty of no higher offense than an assault and battery, and where the trial court refused the requested charge comporting with the above rule, the same is reversible error.

Appeal from the District Court of Denton. Tried below before the Honorable C. R. Pearman.

Appeal from a conviction of asault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*John T. Spann,* for appellant.—Cited King v. State, 134 S. W. Rep., 687; Martin v. State, 122 id., 558; Vaughn v. State, 180 id., 131.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for assault with intent to murder. Punishment two years confinement in the penitentiary.

Appellant and one Williams were wanted in Dallas County upon a felony charge, and were being held by the officers at Gainesville. W. J. Davis, the assaulted party, was a deputy sheriff for Dallas County and had gone to Gainesville to convey appellant and Williams to Dallas. They left Gainesville on the train at three o'clock in the morning. Nothaf and Williams were handcuffed, Nothalf's right wrist to Williams' left. According to Davis' testimony, about daylight appellant asked Davis if they could get a drink. Upon approaching the water cooler appellant threw red pepper in the eyes of the officer, and Williams immediately said "John, get his gun." Appellant, Williams and the officer all got hold of the gun, but in the scuffle the two twisted it out of his hands and Williams presented

it at the officer, telling him, (with an oath) "Get to the other end of the car or I will kill you." On the failure of the officer to comply he fired at him. The officer finally got to them again in the scuffle they got down, Williams being on the bottom, the officer on top of him and appellant on the officer. Appellant got his finger in the officer's mouth and pulled his head around. The officer discovered at this time that the gun was again cocked and got his hand between the hammer and cylinder catching the falling hammer on his hand and thus preventing the pistol from again firing. The conductor came to the officer's help, pulled appellant loose, and the officer regained possession of his gun. During the scuffle the gun was discharged several times.

The court did not submit a charge upon any lower grade of offense than that of assault with intent to murder. Exception was reserved to the failure to submit the lower grades. The only defensive charge presented was that if at the time Williams shot Davis he did not intend to kill, appellant should be acquitted of assault with intent to murder, or that if appellant did not know of the unlawful intent of Williams to shoot Davis he should likewise be acquitted of assault with intent to murder. Appellant's testimony raising the defensive issues was as follows:

"There was an understanding between me and Frank Williams that we would escape without harm to Mr. Davis. Our intention was to throw pepper in his eyes and get hold of his gun and throw it out of the window so he could not harm either of us. Frank Williams originated this plan to escape and there was a specific understanding between us before I agreed to enter into it; he promised me faithfully not to harm Mr. Davis whatever before I would go into it and he said all right, and I believed him and entered into it with the firm belief that there would be no harm done. I had been told that red pepper would not injure the eyes of a human being. My purpose in the scuffle was to get Mr. Davis' gun and throw it out of the window so he could not hurt us. Frank Williams got hold of the gun. I did not know at any time that Frank Williams intended to shoot Mr. Davis."

A special charge was requested by appellant to the effect that if appellant and Williams conspired together to effect their escape by throwing pepper in the eyes of the officer, and that no other injury was to be inflicted upon him, and that appellant entered into such conspiracy only with that understanding; and that after Williams secured possession of the officer's pistol he fired at the latter, and that such act on the part of Williams was not contemplated by the appellant at the time he entered into the conspiracy, and he had no knowledge of Williams' intent to fire upon the officer, that appellant would not be guilty of assault with intent to murder. The court declined to submit this charge and in such refusal, we think, committed error.

The general proposition stated by Mr. Branch in his Ann. Penal Code, on page 351 relative to the offense of murder resulting from conspiracy is as follows:

"If there is evidence that no more was contemplated than an ordinary battery on the deceased and that another, on an independent impulse or design, killed the deceased, the court should charge affirmatively on such theory and inform the jury that if such was the purpose of defendant, and that another besides the intent and purpose of the defendant killed the deceased intentionally that the defendant would be guilty of no higher offense than an assault and battery."

This proposition is supported by Harris v. State, 15 Texas Crim. App., 37; Blain v. State, 30 Texas Crim. Rep., 706, 18 S. W. Rep., 862; Mitchell v. State, 36 Texas Crim. Rep., 314, 36 S. W. Rep., 456; Wilson v. State, 70 Texas Crim. Rep., 3; 155 S. W. Rep. 242. The Wilson case last cited was one of assault with intent to murder which follows the doctrine heretofore announced and cites many cases in support thereof. If the conspiracy contemplated escape at all hazards even to the extent of taking the officer's life if necessary to effect it, appellant would be responsible for any act of Williams within contemplation of the conspiracy; but if the understanding limited the assault to one less than contemplated murder, and Williams, moved by an independent and new design not embraced in the original undertaking, fired at the officer intending to kill him if necessary to effect their escape, it would be manifestly unjust to hold appellant accountable for an act which he never contemplated, and which extended beyond his agreement. The propriety of the court giving the requested charge, is we think, apparent, and carries with it the necessity of also submitting appropriate instructions on the lower grades of assault.

A number of bills of exception are presented to the reception and rejection of testimony. We deem it unnecessary to discuss them at length as the case will likely not be developed in the same manner upon another trial. We would, however, call attention to one bill which indicates that the witness Davis was permitted to state a conclusion in that it appeared to him appellant was protecting the man who was handling the gun. This appears upon its face to have been improper but perhaps not of very serious character. Complaint is also made because appellant was not permitted to show how many shots were fired by the officer after he regained possession of the pistol, This might not throw any light upon the question of appellant's guilt, but it occurs to us it would be proper to admit such testimony as developing the res gestæ of the entire transaction.

For the error heretofore discussed the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*