### McDONALD v. STATE. (No. 12332.)

Court of Criminal Appeals of Texas. March 27, 1929.

State's Rehearing Granted Oct. 16, 1929. Appellant's Rehearing Denied Dec. 18, 1929.

Clyde E. Thomas, of Big Springs, and J. F. Cunningham, of Abilene, for appellant.

Lockhart, Garrard & Brown, of Lubbock, and A. A. Dawson, State's Atty., of Austin, for the State.

LATTIMORE, J. Conviction for murder; punishment, five years in the penitentiary.

Appellant was a deputy sheriff. Informed that a felony had been committed by two Mexicans who had fled, he called the sheriff over telephone, and was told to handle the matter himself as he thought best. He gathered a posse, and at a late hour in the night went out in the direction he thought the Mexicans had gone. At about 4:30 in the morning his posse was near Grand Falls. Deceased, a restaurant man in Grand Falls, had stayed up that night to furnish food to a group of men who desired same after the adjournment of their lodge. The banquet was finished about 4 a. m. He had to give early breakfast to another group, and, having no time to sleep, got in a car with Murray for a drive to rest and refresh himself. Unfortunately they took the road upon which the posse was stationed, near a gate. Murray was driving the car, deceased sitting beside him. As they approached the posse, appellant stepped in front of the car occupied by Murray and deceased, and, according to Murray's testimony, ordered them to halt. Murray said he was scared, thought hi-jackers were holding them up, so he wheeled his car to the left, turned, and drove back. As the car turned, a fusillade of shots, twenty to thirty, were fired, and deceased was killed. Two wounds were in his body, one in the neck and one in the side, either of which, according to a doctor who examined the body, would be fatal. He was also shot through the arm, and a pistol bullet was taken out of his hand. The doctor expressed the belief that the neck wound seemed to have been made by a bullet about the size of the one taken out of the hand. We find no testimony as to the size of the bullet or shot which inflicted the wound in the side. Murray was also shot in the hand by a buckshot. Numerous bullet holes were in various

parts of the car, including the casings, one of which, according to the testimony of a witness, was punctured by a buckshot and another by a pistol ball. Appellant proved a good reputation, and that deceased was a total stranger, against whom he had nothing. He testified that when he stepped into the light of Murray's car he called out to the occupants, "This is the law, stop." When the car wheeled, appellant thought the Mexicans were trying to get away, and says he shot at the rear wheels of the car, purposing to puncture the tires and thus stop the car. He swore that he gave no order to the others with him to fire, and did not know they were going to shoot. The testimony further shows that appellant and some of his posse got in a car after the shooting at the gate and pursued Murray, who thereupon abandoned his car and fled on foot. Appellant shot at or toward Murray while thus fleeing, and he fell to the ground apparently to make his pursuers think him dead. Appellant and one or two of his posse went to Murray, who thereupon got up. He says that appellant said to one of the others that he "just sprinkled him with shot." It does not appear whether Murray got his wound at the first shooting near the gate, or when he fled from his car on foot.

Appellant complains of the refusal of a special charge which sought to have the jury told that an officer has the right to shoot as a means of frightening a person about to be arrested, into stopping, provided such officer has no intent to kill or injure. We know of no law giving such right or authorizing such charge. Article 241, Code Cr. Proc. 1925, provides that an officer making an arrest, which of course means a legal arrest, may use all reasonable means to effect same, but cannot use greater force than necessary to secure the arrest and detention of the offender, and in article 242, Code Cr. Proc. 1925, the right is given to break open a door of a house where the offender may be, if admittance is refused, after information is given as to the authority and purpose of the arrest. The notes under article 241 of Vernon's Annotated Criminal Statutes of the State of Texas, cite many authorities as supporting the proposition that violence can only be used in the necessary self-defense of the person making such arrest. Among said cases cited are Miller v. State, 31 Tex. Cr. R. 609, 21 S. W. 925, 37 Am. St. Rep. 836; Jones v. State, 26 Tex. App. 1, 9 S. W. 53, 8 Am. St. Rep. 454. In Giebel v. State, 28 Tex. App. 151, 12 S. W. 591, we said that an officer is guilty of murder if he kills a prisoner whose only effort is to run away and thus escape arrest. We think the charge correctly refused.

The court charged on principals, but gave no charge on the theory of a killing by some other member of the posse than appellant, shooting on an independent impulse unknown to appellant and not within the scope of their undertaking. This, however, was not called to the attention of the trial court by any exception or special charge.

There is a general exception to the charge for failure to submit the affirmative defense, but no suggestion in the exception or any special charge appears as to what is the affirmative defense, and this might have been difficult for the trial court to determine.

There was an exception to the charge for failure to submit the law of negligent homicide, which exception we think pertinent, and that the failure of the court to so charge was error. Under our law, when any person in the performance of an unlawful act kills another, he shall be guilty of negligent homicide of the second degree and punished accordingly. Articles 1230-1243, Pen. Code 1925. If appellant shot on the occasion in question, intending to kill, he might be guilty of murder with or without malice aforethought, dependent on the jury's belief as to the motive actuating him. If he shot without intending more than to alarm the occupants of the car, the use of a deadly weapon in a threatening manner for the purpose of alarming such parties, might be an assault within the meaning of article 1141, Pen. Code 1925. If he shot intending to puncture the tires or otherwise injure the car of Murray, this would seem an act which would give just occasion for a civil action such as is comprehended by article 1240, Pen. Code 1925. In either event appellant would seem guilty of an illegal shooting. He testified that he shot with a shotgun at the tires, intending only to stop the car. That from this shot deceased may have been killed would be possible. Murray, sitting by deceased, was struck by a buckshot. No effort is made to show that the fatal wound in the back of deceased was not inflicted by buckshot. The doctor's opinion, based solely on an examination of the wound in the neck, that that wound was caused by a bullet about the size of the one in the hand of deceased, would be but his belief, and would not conclude the jury's right to believe that deceased came to his death from a gunshot inflicted by appellant himself. This being true, and appellant affirming, without seeming contradiction from any one, that he shot at the tires with a shotgun with no intention to kill, seems to us to make it seriously erroneous for the trial court to fail and refuse to charge on negligent homicide of the second degree. It being necessary to reverse this case for this error, we suggest that on another trial of the case, if there be one, and the testimony be similar to that in the instant record, the court should charge on the theory of a killing by some one in the posse other than appellant, on an independent impulse. See Stevenson v. State, 17 Tex. App. 618; Faulkner v. State, 43 Tex. Cr. R. 311, 65 S. W. 1093; Smith v. State, 52 Tex. Cr. R. 29, 105 S. W. 182; Goodwin v. State, 58 Tex. Cr. R. 503, 126 S. W. 582.

For the error mentioned, the judgment will be reversed, and the cause remanded.

### On State's Motion for Rehearing.

MORROW, P. J. In his motion for rehearing, state's counsel insists that the testimony with reference to the location of the wounds upon the deceased was misinterpreted by this court in its original opinion. In view of the evidence, in the opinion of the writer, the location of the wounds inflicted upon the deceased is a matter of no importance as bearing upon the legal question controlling the disposition of the appeal.

From the testimony of the appellant, the following appears: He was a deputy sheriff. An individual by the name of "Dutch" or Henry Dietz, who bore the reputation of a violator of the laws prohibiting the liquor traffic, was assaulted and injured, and informed the appellant that the injury was inflicted by two Mexicans whose names were disclosed, and that the Mexicans were hired by a man known as Big Boy Williams, who also bore the reputation of a violator of the liquor laws. As related by Dietz, he had been robbed by the Mexicans of his money and his automobile. The latter was known to the appellant to be a Nash sedan. The appellant, with the view of apprehending the offenders, summoned several persons to his aid, including Big Boy Williams, who had been previously arrested in view of the statement of Dietz, but released upon his denial that he hired the Mexicans to assault Dietz. After assembling his posse, which included one Coleman and three other persons who were with the appellant in an automobile and two other persons in another automobile following, they all proceeded into the country for some distance at a late hour of the night. Before assembling the posse, appellant communicated with the sheriff and was instructed to arrest the Mexicans mentioned. Entertaining the belief that the Mexicans were endeavoring to get down to the river, and observing the lights of a car approaching, the appellant and his companions caused the lights on their cars to be turned off. The appellant and his four companions got out of their cars. The approaching car (which was a Ford touring car) ran up to a point about 25 feet of the appellant's car, and, when the appellant stepped into the light and said, "This is the Law, stop," the driver of the car immediately turned it around, and the appellant, not knowing it was a Ford car and thinking it contained the Mexicans, fired his shotgun (which was loaded with buckshot) in the direction of the car, for the purpose, he claimed, of stopping but not of injuring the parties, and also for the purpose of puncturing the tires. According to his testimony, he fired no additional shots at that time, but that his companions fired a number of times. The entire time consumed in the firing upon the first occasion did not exceed eight or ten seconds. The appellant gave no instructions to his companions to fire. The driver of the Ford car failed to stop, and the appellant and his companions pursued it for a short distance, when one of the occupants of the Ford car got out of it, and the appellant and Coleman pursued him on foot. According to the appellant's testimony, he fired over the head of the man who was fleeing.

In his cross-examination, the appellant admitted that he had made a statement in writing in which he said that, after waiting for the approach of the car in which the deceased was riding and subsequently killed, and after stating to the occupants of the car that he was an officer and calling upon them to stop and as the car was turning, he fired at the tires once; that he did not know who else fired, but said: "We fired several shots. We got in our car and followed them, watching the tail light, about half a mile when Coleman and myself jumped out of the car and run around the car. When I saw the bulk of a man running I fired at him and he fell. * * * I fired at him and he fell and I went on to where he fell, rolled him over on his back to see how bad he was hurt, thinking I had shot him. * * * Thinking I had shot him and went there to see who he was."

It developed that, when they reached the man who had fallen, it was Murray, who, from other testimony, it appears was driving the car in which the deceased was killed. Murray was not wounded except that he was shot in one of his hands with a bullet or buckshot. Appellant said further: "When that Ford turned around, I shot the tires. I was if twenty shots were fired. I don't believe the first one to shoot. * * * I don't know there were that many. There were several shots fired. The best I could count there were only eight."

Murray, the driver of the car in which the deceased was killed, was a witness for the state. He and Jones, the deceased, had been in attendance upon a lodge meeting until late in the night. Jones, who was conducting a café at Monahans, remarked that he would have to get an early breakfast, that it was too late to go to bed, and suggested that they take a drive in the car. While driving upon the road, a man suddenly stepped in front of the lights of Murray's car and said, "Halt," but said nothing of being an officer. Becoming frightened and believing that he was about to be robbed, Murray turned his car, and, as he turned, shots were fired, estimated by him from 15 to 20, and estimated by another state's witness at about 25. There was more than one gun firing, but the number the witness could not tell. As he fled in his car, he was pursued. Finding that he was unable to escape, he stopped the car and left it. He was pursued by McDonald, the appellant, and Coleman and fired upon. When fired upon, he fell to avoid other shots. His left hand was shot through with a bullet or buckshot. This

occurred some time after the deceased was shot; that is, some time after Murray had gotten out of his car and run for some distance. According to the witness, his was a Ford touring car with curtains up. It was a moonlight night. His examination of the bullet holes upon the car after the shooting revealed three or four through the back curtain. One shot came out through the top of the car over the steering wheel. There were two holes in the left side of the car and one in the little side curtain. Jones, the deceased, was sitting in the seat by the witness at the time the firing began; that is, on the right-hand side.

There was evidence from the witness Wilcox, one of the posse, that the appellant had said before the occurrence in which the deceased lost his life that it was a Nash sedan that he was hunting; that the witness and his brother, at the appellant's solicitation, were near the scene in a different car from that on which the shots were fired by Wilcox and his brother; that the character of the car in which the deceased and Murray were riding was observed by him and his brother at the time it was approaching and before the shots were fired. They could tell that it was a Ford touring car. No statement was made before the shooting that the posse were officers.

There was testimony to the effect that on the occasion the appellant was under the influence of intoxicating liquor. There was testimony to the contrary. Appellant denied it. There was also testimony supporting the reputation of the appellant as a peaceable man. There was no evidence of animosity towards either Jones or Murray, and the appellant disclaimed any desire to injure them.

■■ To the mind of the writer, the evidence does not present an issue of negligent homicide. The theory upon which the case was submitted to the jury was that of a conspiracy; that in what was done at the time the deceased was killed all the parties in the car with the appellant were acting together. The appellant fired first, according to his testimony, and the others so quickly thereafter that it is difficult to estimate the space of time between the two. According to the appellant's testimony, he did not shoot to kill, but shot at the tires. It is not claimed by the state that the shots fired by him personally killed the deceased. To the mind of the writer, such proof is not necessary to support the finding of the jury of the appellant's guilt. The jury was not bound to accept as true his statement that he fired at the casings. From his conduct then, previous, and subsequent thereto, the jury was warranted in concluding that it was the intent of the parties to kill the deceased and his companion, believing them to be Mexicans, and that their object in killing them was to prevent their escape. That many of the shots fired by the posse of which the appellant was a member and lead-

er were fired into the car in which the deceased was riding and that by some of the shots so fired his death was brought about is not open to controversy. The legal principles controlling the case of Banks v. State, 85 Tex. Cr. R. 165, 211 S. W. 217, 5 A. L. R. 600, in which a death penalty was affirmed against Banks, who fired into a moving train, the shot taking effect upon one of the railroad employees of the train and against whom Banks had no specific grudge, are deemed applicable to the facts presented in the present appeal. Taking account of the law of principals, the facts are not unlike those before the court in Bilyeu v. State, 103 Tex. Cr. R. 25, 279 S. W. 845, in which it appears that the marshal of the town, endeavoring to stop an automobile in which certain boys were making a noise calculated to disturb the peace, fired his pistol, according to his testimony, at the casings of the car, with no intent to injure any of the boys, the shot taking effect in the body of one of the boys and killing him, the court stating that the circumstances were such as justified the conclusion of the jury that the shots were fired at the occupants of the automobile, and that, if such were their conclusions, they were justified in finding the appellant guilty of murder. In the present instance, if the occupants of the car fired upon by the appellant and his companions had been Mexicans for whom they were looking, we are aware of no principle of law that would have justified their acts. The right to arrest an offender charged with an offense does not include the right to slay him. If the shots fired by the posse were voluntarily fired in the car in which the deceased and his companion were riding and the death of the deceased resulted therefrom, the offense, in the opinion of the writer, is in no sense to be classified as negligent homicide. Illustrative is the case of Davis v. State, 106 Tex. Cr. R. 300, 292 S. W. 220, in which two young men were riding in an automobile upon the streets of Terrell at night. The appellant, a constable of the county, fired into the car and killed the deceased. According to his testimony, the constable thought the car was driven by drunken negroes and he wanted to stop them; that the shots were fired for that purpose and with no intent to kill. On the appeal, complaint was made of the failure to submit the issue of manslaughter, also the issue of negligent homicide. Both of these contentions were rejected in the original opinion and the opinion on motion for rehearing written by our Brother Lattimore in which attention was called to the case of Banks v. State, supra. The contention that manslaughter was involved was likewise rejected, the appellant basing his contention upon the opinion of this court in Carter's Case, 30 Tex. App. 551, 17 S. W. 1102, 28 Am. St. Rep. 944. The case is distinguishable from the present for the reason that Carter was a member of a posse and was

fired upon by the fugitive before the homicide for which he was on trial, thereby presenting the issue of self-defense and manslaughter, neither of which is involved in the present record.

The state's motion for rehearing is granted, the order of reversal is set aside, and the judgment of the trial court is affirmed.

### On Appellant's Motion for Rehearing.

HAWKINS, J. ▆ Appellant has filed a motion for rehearing in which it is again insisted that the trial court should have charged on negligent homicide. Appellant claims that he fired with a shotgun at the casings on the automobile and that he did not kill deceased; it seems to be admitted by the state that wounds from which death resulted were not inflicted with a shotgun; this being true, the fatal shots must of necessity have been fired by some member of the posse other than appellant. If appellant did not fire the shot which caused death, how could he be guilty of negligent homicide, or how could the issue as to him arise? We have been at some loss to know just how the trial judge would have gone about formulating a charge on negligent homicide under the circumstances. No aid was tendered him in the nature of a special charge; an objection for omitting such instruction was as far as appellant went. To be sure, this is all that was necessary if the issue was in the case. Our statute (article 76, Pen. Code 1925) in very positive terms says there can be no accomplice in "negligent homicide." The very elements of the offense, in the absence of such a statute, render it absurd to think of one in advance advising or encouraging another to commit "negligent homicide." Equally unreasonable does it seem to contemplate that people may conspire or agree in advance to commit "negligent homicide." This whole case revolved around the contention that appellant and the other members of the posse were acting together to find and kill the Mexicans; instead the posse found and killed deceased and wounded his companion. The court instructed the jury as follows:

"\* \* \* The mere presence of the defendant at the time and place of the killing is not sufficient to show that he was a principal offender, but the evidence must go further and show beyond a reasonable doubt that the defendant either agreed to the commission of the offense or aided by acts or encouraged by words or gestures those engaged in the killing of the deceased, and unless you find and believe from the evidence, beyond a reasonable doubt, that the defendant agreed to the commission of the offense, if any, or aided by acts or encouraged by words, or gestures, those who killed the deceased, *then you will find the defendant not guilty and so say by your verdict.*"

If appellant had requested it, he might have been entitled to an elaboration of the foregoing instruction advising the jury that, if there had been no agreement to kill, and that appellant fired at the casings, not thereby intending to encourage others of the posse to shoot, but that some member of the posse, acting upon an independent impulse to which appellant was in no way a party, fired and killed deceased, appellant would not be guilty. No such instruction was requested, and no objection was urged to the charge given. It seems to have been satisfactory to appellant. There may be cases in which the principles of negligent homicide have been applied where the facts show that wounds resulting in death were inflicted by some one other than accused, but, if so, our attention has not been directed to them.

Appellant's motion for rehearing is overruled.