Larry Michael **MAYFIELD**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 619–85.

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

Jane Wynegar, court appointed on appeal, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Eleanor M. McCarthy and Jim Peacock, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted as a party to the offense of robbery, and his punishment was assessed by the jury at twenty years confinement in the Texas Department of Corrections. The court of appeals reversed and remanded the conviction, holding that the trial court erred in failing to submit appellant's requested jury instruction affirmatively charging on "the defensive issue of independent impulse." *Mayfield v. State,* 690 S.W.2d 682, 686 (Tex.App.—Houston [1st] 1985). We granted the State's petition for discretionary review to

determine whether this holding is in conflict with prior decisions of this Court construing the concept of "independent impulse." Tex.Cr.App. Rule 302(c)(3).

## I.

The circumstances surrounding the offense are more than adequately summarized in the opinion of the court of appeals, as follows:

" ... The complainant testified that she and her brother were in a parking lot in Houston on May 20, 1983, waiting for the complainant's husband to come out of a club next door. Appellant and another man walked past them, then returned and asked them for money. The complainant, in Vietnamese, told her brother to pretend he did not understand English and to slowly walk away. Appellant's companion told the complainant to shut up, and asked her if she wanted to get killed. Appellant's companion grabbed the complainant's purse, pushed her, and ran down the street. Appellant held the complainant's brother for a moment, and then he, too, ran down the street, with the complainant's brother chasing them. The complainant had Vietnamese currency in her purse.

The complainant's brother testified that appellant's companion got into a car, started it, began to drive away, and then yelled to appellant to hurry. Appellant got into the car, and they sped away. The complainant's brother flagged down a passing police car and reported the robbery.

Can Duc Nguyen testified that he was driving home on the night in question when his car was hit in the rear. The other car kept driving for several blocks and Nguyen followed it, honking his horn. When it stalled, appellant and another man got out. The driver of the other car yelled to appellant to run as he ran from the scene. Appellant did not run, but approached Nguyen's car, denying responsibility for the accident. Nguyen asked him to wait while he called the police. A police car arrived almost immediately, and while Nguyen was talking to the police, appellant began walking in the direction the driver had run.

The arresting officer testified that he saw appellant walking away and stopped him to ask if the stalled car belonged to him. Appellant said that it did, and gave the name Larry Darnell. Appellant testified that his name on his birth certificate is Larry Darnell Mayfield. The police arrested appellant for suspicion of robbery. In an inventory search of the car, they found Vietnamese currency.

Appellant testified that, on the night in question, he saw a man he knew only as Anthony standing on the side of the road. Anthony appeared to be intoxicated, and appellant offered him a ride. Anthony told appellant to pull into a parking lot so that he could give him some money for gasoline. Appellant parked his car, leaving the keys in the ignition, while they walked to an oriental club, where Anthony said he would get the money. As they approached the club, they saw the complainant and her brother standing in the parking lot next to the club. Appellant asked the complainant's brother for a light, but he received no response. As appellant turned to walk away, he saw Anthony grab the complainant's purse and run back towards the car. Appellant testified that he did not know that Anthony was going to rob the complainant, and he stood watching Anthony run away, shocked by his actions. The complainant's brother pushed appellant aside to run after Anthony, and appellant followed him. Appellant specifically denied that he intentionally hindered the complainant's brother in any way and stated that when he caught up with the complainant's brother, he told him that he had nothing to do with the robbery. Anthony got into appellant's car and yelled for him to get in. Appellant said he hesitated for a moment, but then got in, and Anthony drove away. He said he told Anthony to return the purse, but Anthony ignored him and drove on.

Several blocks away, Anthony ran into another car, and when the appellant's car overheated, Anthony got out and ran. Appellant walked in the same direction to see where Anthony was going, and Anthony yelled to him, asking him if he was coming along. Appellant said no, and Anthony ran away. The driver of the other car asked appellant to stay there while he called the police. While he was gone, appellant saw a passing police car and flagged it down. He said he tried to give the police his full name, but the officer stopped him before he said his last name."

690 S.W.2d at 683–84.

At the conclusion of the presentation of the evidence at the guilt phase of the trial appellant requested the following jury instruction relative to the court's charge authorizing the jury to convict him as a party to the robbery under V.T.C.A. Penal Code, § 7.02(a)(2):

"If you believe from the evidence beyond a reasonable doubt that on or about May 28, 1983, an unknown black male in the course of committing theft of property owned by Thutam N. Tran, and with intent to obtain and maintain control of the property, intentionally & knowingly threatened and placed the complainant in fear of imminent bodily injury and death and if you further believe from the evidence beyond a reasonable doubt that on or about May 28, 1983, the Defendant Larry Michael Mayfield, as a party, knew of the unknown black male's unlawful intent and agreed to or aided or encouraged him in the commission of the offense and that the actions of the unknown black male were not of his own independent impulse, then you will find the defendant guilty of robbery.

Unless you so find beyond a reasonable doubt or if you have a reasonable doubt thereof you will acquit the defendant of robbery.

You are further instructed that if you believe that the defendant was not acting together with the unknown black male in robbing the complainant, or that the defendant had not previously entered into an agreement with the unknown black male to rob the complainant, or if you have a reasonable doubt thereof, you will acquit the defendant.

If there was no such common design and intent by the unknown black male and the defendant to commit the offense, or, if the offense was committed by the unknown black male acting independently of the defendant in so doing and without participation by him in the design and intent to commit it, then the defendant is not guilty and if you have a reasonable doubt as to this issue, you must give the defendant the benefit of the doubt and acquit him." [1]

The trial court refused to submit appellant's requested instructions, simply charging the jury under the express terms of § 7.02(a)(2), supra, that it could convict appellant as a party to the robbery only if it found beyond a reasonable doubt that, "with intent to promote or assist an unknown black male to commit" the offense, he "did act with intent [sic] to encourage, direct, aid, or attempt to aid the unknown black male" in the commission of the offense.

After reviewing pertinent caselaw the court of appeals observed:

"In each case we have examined, either the evidence failed to raise the issue, or the trial court submitted a jury charge which was sufficient to present the defendant's theory and to protect his rights. However, in the instant case, the evidence raised the issue and the charge given did not affirmatively submit the defensive issue of independent impulse."

*Id.,* at 686. It is with the conclusion that the issue of independent impulse was raised that we find we must disagree.

1. The last paragraph is remarkably similar to one in the court's charge reproduced in *Edwards v. State,* 494 S.W.2d 566, 569 (Tex.Cr.App. 1973). See also McClung, Jury Charges (Rev. Ed.1985) at 18–19 for examples of other charges in like vein.

## II.

The concept of "independent impulse" is a somewhat elusive one. It has never been clearly delineated in the caselaw. As revealed in the early cases, however, it seems to embrace the theory that an accused, though he was admittedly intent on *some* wrongful conduct, nevertheless did not contemplate the extent of criminal conduct actually engaged in by his fellows, and thus cannot be held vicariously responsible for their conduct.[2]

### A.

Under prior penal codes an accused who was present during the commission of an offense could be guilty as a "principal," if either, "knowing the unlawful intent" of the person actually engaged in commission of the offense, he lent that person "aid by acts or encourage[ment] by words or gestures," P.C., Art. 66 (1925); P.C., Art. 75 (1911, 1879); P.C., Art. 215 (1856), or beforehand he had "advise[d] or agree[d] to the commission of [the] offense," P.C., Art. 69 (1925); P.C., Art. 78 (1911, 1879); P.C., Art. 218 (1856). In a judicial expansion of this latter, conspiracy based theory of principals, it was held that:

"Each conspirator is responsible for everything done by his confederates which follows immediately in the execution of the common design as one of its natural and probable consequences, even though it was not intended as a part of the original design. To be admissible in evidence, or in order for responsibility to attach to the nonacting party, the act must be the ordinary and probable effect of the wrongful act specifically agreed on, so that the connection between them may be reasonably apparent, and not a fresh and independent product of the mind of one of the conspirators outside of or foreign to the common design. Unless it is clear as a matter of law that the wrongful act was within the contemplation of the coconspirators or that such

act was not an independent one and outside of and foreign to the common design, then, if there is evidence in behalf of the defendant to the contrary, a question of fact within the province of the jury, under appropriate instructions from the court, is ordinarily presented. [citations omitted]"

2 Branch, Tex.Pen.Code Ann. § 719, at 6–7 (2d ed. Supp.1968–69).

Practically all the cases under prior penal codes discussing in one guise or another the theory of "independent impulse" dealt with prosecutions for murder in which the defendant claimed the evidence raised a question whether the killing was not "the ordinary and probable effect of the wrongful act specifically agreed on," but rather was "an independent [act of his coconspirator] ... foreign to the common design."

What emerges clearly from those cases is that where the evidence established indisputably that the defendant had contemplated use of a deadly weapon in the furtherance of the act agreed on, he could be found guilty as a principal, since death, though perhaps not specifically intended, was nevertheless "the ordinary effect of the cause." *Mitchell v. State*, 36 Tex.Cr.R. 278, 36 S.W. 456 (1896); see also *Kirby v. State*, 23 Tex.App. 13, 5 S.W. 165 (1887); *Davis v. State*, 78 Tex.Cr.R. 352, 180 S.W. 1085 (1915); *LaCoume v. State*, 127 Tex. Cr.R. 523, 78 S.W.2d 203 (1935); *Leviness v. State*, 157 Tex.Cr.R. 160, 247 S.W.2d 115 (1952). Thus, it was not error for the trial court in such a case to have given a charge authorizing the jury to convict the defendant as a principal under the second of the definitions set out *ante*, especially where the charge also instructed the jury it must acquit the defendant of murder should it find that, or have a reasonable doubt whether, *inter alia*, the death "did not result reasonably, naturally, and probably from the agreement and purpose aforesaid to give the deceased a beating, and was not reasonably to be anticipated by [the defend-

---

**2.** Judge Teague is quite mistaken in attributing "the theory of independent act or impulse" to Judge Harper in *Serrato v. State*, 74 Tex.Cr.R. 413, 171 S.W. 1133 (1914). See *Mitchell v. State*, 36 Tex.Cr.R. 278, 36 S.W. 456, 459–460 (1896).

ant] as the likely, probable, and reasonable result which would occur in the accomplishment of such purpose[.]" *Mitchell v. State*, 36 S.W. at 458. Should the evidence present a *question* whether or not the agreement to which defendant was a party embraced either "resistance to the death" or the use of a deadly weapon, then he was found clearly to be entitled to an affirmative instruction on "independent impulse." See, e.g., *Blain v. State*, 30 Tex.App. 702, 18 S.W. 862 (1892); *Bibby v. State*, 65 S.W. 193 (Tex.Cr.App.1901); *Faulkner v. State*, 43 Tex.Cr.R. 311, 65 S.W. 1093 (1901); *Goodwin v. State*, 58 Tex.Cr.R. 496, 126 S.W. 582 (1910); *Wilson v. State*, 70 Tex. Cr.R. 3, 155 S.W. 242 (1913); *Nothaf v. State*, 91 Tex.Cr.R. 619, 240 S.W. 936 (1922); *McDonald v. State*, 22 S.W.2d 670 (Tex.Cr.App.1929); *Brown v. State*, 146 Tex.Cr.R. 602, 177 S.W.2d 64 (1944).

## B.

■ The 1974 Penal Code substantially reformulated the law of vicarious criminal responsibility, without, however, radically modifying the substance of the prior law. V.T.C.A. Penal Code, § 7.01(a) provides that "[a] person is criminally responsible as a party to an offense if the offense was committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Subsection (c) of the same provision expressly abolishes the distinction of prior codes between principals and accomplices. Situations in which a person may be held criminally responsible for the conduct of another are set out in V.T.C.A. Penal Code, § 7.02(a), subsection (2) of which reads:

"(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]"

The Practice Commentary following § 7.02, supra, notes:

"Subsection (a)(2) sets out the basic test of complicity and replaces Penal Code arts. 65, 66, 67, 69, and 70, which designated perpetrators and nonperpetrators either 'principals' or 'accomplices.' It does not substantially change the prior complicity test; rather, it specifies that complicitous conduct must be accompanied by 'intent to promote or assist the commission of the offense,' whereas the prior articles enumerated a few circumstances and situations from which it was reasonable to infer such an intent."

Thus, it appears the language of. § 7.02(a)(2), supra, was designed to embrace all those situations enumerated in prior codes by which, formerly, an accused could be found guilty as a principal or an accomplice. Presumably, then, the presence of an accused at the commission of an offense, coupled with proof of a prior agreement that the offense should be committed, would serve to establish both encouragement of and intent to promote the commission of that offense, and hence would render the accused susceptible to a finding of criminal responsibility under § 7.02(a)(2), supra.

■ Furthermore, the prior gloss of the decisional law holding an accused liable for any act which, though unintended, was "the ordinary and probable effect of the wrongful act specifically agreed on," was codified, with new limitations, in § 7.02(b), supra.[3] This provision reads:

"(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that

---

3. In recognition of the fact that this doctrine is most often applied in the context of convicting defendants as parties to felony murder, the drafters of the Texas Penal Code, A Proposed Revision, State Bar Committee on Revision of the Penal Code, Final Draft (October 1970) "dealt separately with this recurring problem, in the criminal homicide chapter, by creating a special 'offense' of party to felony murder. See the commentary on Section 19.02." Practice Commentary, supra. Instead of thus specifically tying the doctrine to the offense of felony murder, however, the Legislature enacted present § 7.02(b), supra.

should have been anticipated as a result of the carrying out of the conspiracy."

Section 7.02(b), supra, narrows the prior conspiracy theory of vicarious criminal responsibility in two respects. First it requires that the "object" offense be of the grade of felony. Second, the felony actually or additionally committed must have taken place in furtherance of the "object felony." See Practice Commentary, supra. Thus, the accused may be found to have been a party to a felony offense committed by another if he conspired with that other to commit *some* felony offense, and the offense actually committed, though not intended by the accused, was perpetrated in furtherance of the "object felony," and was "one that should have been anticipated," presumably by the accused himself, as, to use the language of the cases under prior codes, "the ordinary effect of the cause."

■ In conformity with caselaw under prior codes, it is reasonable to conclude that should the evidence raise a *question* whether the offense actually committed was perpetrated in furtherance of the object felony, or was one which should have been anticipated by the accused, a timely requested affirmative instruction on the theory of independent impulse ought to be submitted to the jury.

### III.

In concluding that the appellant in the instant case was entitled to an instruction on independent impulse the court of appeals discussed three cases from this Court which have been decided since the advent of the 1974 Penal Code. In each case it was the defendant's position that while he had agreed to participate in some form of offense rising to the level of a felony, the offense for which he was being prosecuted arose from an independent impulse on the part of his confederate.

In *Skidmore v. State,* 530 S.W.2d 316 (Tex.Cr.App.1975) the defendant and a companion talked one Wilburn into driving them to a secluded spot on the edge of a cliff for the avowed purpose of engaging in homosexual activity. According to the defendant's confession, the actual intent of the two was to rob Wilburn, but in the course of carrying out this intent defendant's companion, enraged by the homosexual advance, pushed Wilburn over the cliff. The trial court's charge to the jury authorized a finding that the defendant was criminally responsible for the murder of Wilburn under the terms of § 7.02(b), supra. In response to the evidence that the killing had not occurred as part of the plan to rob Wilburn, the trial court charged the jury that it should acquit the defendant if it should find his companion killed Wilburn "because of rage or resentment arising out of homosexual advances" from Wilburn, "and not in furtherance of committing or attempting to commit the offense of robbery ... or in furtherance of immediate flight from such commission or attempt to commit[.]" 530 S.W.2d at 318. This Court found that the instruction given "adequately submitted" defendant's defensive theory.

Likewise, in *Simmons v. State,* 594 S.W.2d 760 (Tex.Cr.App.1980) the Court found that the instructions given by the trial court were adequate to protect defendant Anthony's rights. In that case Anthony had participated in a robbery in which Simmons killed the victim. The Court found that the jury instruction requiring that a finding that Simmons killed while "engaged in the commission of robbery or attempted robbery" in order to convict Simmons of capital murder, coupled with an instruction that if Simmons was acquitted of capital murder, so must Anthony be acquitted, was sufficient to present the issue of independent impulse.[4]

4. The writer does not subscribe to the view of *Simmons v. State,* supra, taken in *Sanders v. State,* 707 S.W.2d 78, at 81 (Tex.Cr.App.1986); I believe it misconstrues the holding of *Simmons* to be that "in conspiracy case, no charge on 'independent impulse defense' required—application of law to facts requiring finding defendant guilty beyond a reasonable doubt sufficient." The holding in *Simmons* was merely that *if* independent impulse was raised, it was adequately addressed in the court's charge in the manner described in the text above.

Again, in *LeDuc v. State,* 593 S.W.2d 678 (Tex.Cr.App.1980) the defendant asserted that while she had aided in tying up the victims of her companion in the course of a drug deal gone sour, she had not agreed to kill them and had not known her companion intended to do so. The trial court did not authorize the jury to convict the defendant under § 7.02(b). Nevertheless, the defendant requested a jury instruction "relative to the law of parties and independent impulse." Instead the trial court's charge instructed the jury that before it could convict the defendant it must find, not only that she "acted with intent to promote or assist the commission of the offense" of murder "by encouraging, directing, aiding, or attempting to aid" in its commission, but also that she "knew of the intent ... of [her companion] to kill[.]" We held that this instruction "was substantially the same and adequately covered those refused." 593 S.W.2d at 685.

■ In contrast with these cases, there is no evidence in the case *sub judice* that appellant agreed or conspired with "Anthony" to commit one felony, but that another felony, either beyond appellant's reasonable anticipation or not in furtherance of the object of the conspiracy, was committed. Rather, it is appellant's position that

he never agreed to commit any offense at all, and that in standing between the complainant and her brother so as to obstruct the brother's ability to assist her, any aid thereby rendered to "Anthony" was inadvertent, and not intended to promote the commission of the offense.

This case is controlled by *Davis v. State,* 651 S.W.2d 787 (Tex.Cr.App.1983). In *Davis* the defendant and a pistol wielding companion entered the lobby of a motel and demanded money. Before the clerk could comply she was shot. The defendant was convicted of aggravated robbery. At trial he requested a jury instruction that before he could be convicted as a party to aggravated robbery the jury must find that he knew of his companion's intent to rob the victim.[5] This Court held that a charge tracking § 7.02(a)(2), requiring for conviction a finding that the defendant acted "with the intent to promote or assist the commission of the offense," was a sufficient instruction. As in the instant case, Davis simply asserted that he had not agreed to commit any offense at all. Such a defensive posture does not call for a charge on the theory of independent impulse, and we so hold.

■ Nor did the trial court err in refusing appellant's requested instruction

However, *Simmons* does reflect a fundamental misunderstanding inasmuch as it implies that codification of the conspiracy theory of criminal responsibility in § 7.02(b), supra, somehow limits application of independent impulse to cases in which the evidence raises a question whether the felony committed was in fact perpetrated in furtherance of the object felony, thus:

"The independent impulse defense, as applicable to Sec. 7.02(b) prosecutions, rests on creation of a reasonable doubt that the offense charged was not committed 'in furtherance of the unlawful purpose' ... of the conspiracy. Where some evidence is presented that might support such a reasonable doubt on the issue, a jury charge on the defensive matter should be given."

594 S.W.2d at 763. But while § 7.02(b), supra, may thus have *expanded* the concept of independent impulse, yet embraced within the statute is the requirement that the offense actually committed "should have been anticipated as a result of carrying out the conspiracy." It would appear, therefore, that if the question is raised, an

accused would still be entitled to an affirmative charge that he be acquitted should the jury find, or have a reasonable doubt whether, he did not and reasonably could not have anticipated commission of the actual offense; and this, *regardless* of whether it was committed in furtherance of the object felony.

5. Had Davis contended that he was entitled to a charge requiring the jury to find he knew of his companion's intent to use a deadly weapon, or to shoot someone during the commission of the robbery, in order for it to convict him of *aggravated* robbery, another question altogether might have been presented. However, in order to be entitled to such an instruction he would at least have had to refute the evidence that when his companion pulled out the pistol and said, "Let's have all your money. Let's have it now," Davis exclaimed, "Yeah, let's have it all now." 651 S.W.2d at 788. Otherwise it would be undisputed that the agreement to rob had contemplated use of a deadly weapon, the aggravating factor.

that in order to convict appellant as a party the jury must find that before the robbery was perpetrated he had "previously entered into an agreement" to rob the complainant. As we have demonstrated *ante,* the language of § 7.02(a)(2), supra, that the accused must have acted "with intent to promote or assist the commission of the offense" before he can be found guilty as a party, was manifestly designed to cover those situations enumerated under prior codes, including the presence of the accused at the commission of the offense, coupled with his earlier agreement to commit it. Furthermore, the requested instruction would have ruled out the legitimate alternative that the jury could have found an agreement to rob the complainant arose contemporaneously with the event itself, such that any aid, encouragement, etc., rendered at that time would still have been "with intent to promote or assist the commission of the offense." See *Curtis v. State,* 573 S.W.2d 219, 222 (Tex.Cr.App. 1978).

The judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.

TEAGUE, Judge, concurring.

Although I agree with the holding that took Judge Clinton 13 pages to reach, that because the evidence did not raise the issue, the trial court did not err in not giving the appellant's requested instruction on the law of independent impulse, I am only able to concur in the result because there is just simply too much needless dicta in his 13-page opinion.

It is now axiomatic that if the evidence does not raise a defensive issue, the trial court is not required to give an instruction on the issue. See the many, many cases collated under *West* Criminal Law Key 772(6). Furthermore, before and since *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr. App.1985), a charge that adequately protects an accused's rights is sufficient if the jury could have acquitted him under it, had they believed his version of the facts. E.g.,

*Smith v. State,* 502 S.W.2d 133, 134 (Tex. Cr.App.1973). Here, the trial judge instructed the jury that it was to find the appellant not guilty if they did not find from the evidence beyond a reasonable doubt that the appellant acted with intent to promote or assist, or encourage, direct, aid, or attempt to aid "an unknown black male"[1] when that person committed the offense, and also instructed the jury that if they had a reasonable doubt thereof they were to acquit the appellant. Under *Almanza,* supra, how was the appellant harmed by the trial judge's refusal to instruct on the theory of independent impulse? Cf. *Porter v. State,* 505 S.W.2d 570, 572 (Tex.Cr.App.1974). Furthermore, to have given the requested charge would have perhaps singled out testimonial evidence, which before and since *Almanza,* supra, would have been impermissible as being a comment on the weight of the evidence. See *Aguilar v. State,* 444 S.W.2d 935 (Tex.Cr.App.1969). Also, the denial of a defendant's requested instruction is not error where the requested instruction is merely an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case, the presentation of an alternative theory if you please. See *Barnette v. State,* 709 S.W.2d 650, 651 (Tex.Cr. App.1986); *Green v. State,* 566 S.W.2d 578, 584 (Tex.Cr.App.1978). The requested charge, by analogy, closely resembles a requested charge on the defense of impossibility, emergency, involuntariness, misidentification, or impotence, which need not be given. See *Sanders v. State,* 707 S.W.2d 78, 81 (Tex.Cr.App.1986); *Pelham v. State,* 664 S.W.2d 382, 385 (Tex.App.— Amarillo 1983), P.D.R. refused; *Klein v. State,* 662 S.W.2d 166 (Tex.App.—Corpus Christi 1983, No P.D.R.).

In holding that the trial court erred in refusing the appellant's requested instruction on the theory of independent impulse, the court of appeals never actually stated just exactly why, in light of the facts that were presented to the jury, the appellant

---

1. This is how the trial judge characterized the other party to the offense.

was entitled to an instruction on the theory of independent impulse. The facts, as set out in the court of appeals' opinion, see *Mayfield v. State*, 690 S.W.2d 682, 686 (Tex.App.—Houston [1st] 1985), and repeated in Judge Clinton's opinion, should make it obvious to anyone that if guilty of any offense at all the appellant was guilty only as a party to the offense of robbery, and the jury was instructed that if it did not believe, or if it had a reasonable doubt thereof, it was to find the appellant not guilty. The theory of independent impulse, as a defense to a criminal wrong, is just simply not implicated in the facts that were adduced in this cause. Thus, the evidence did not raise the defensive theory of independent impulse by the "unknown black male"; therefore, the trial judge did not err in refusing the appellant's requested instruction, and that is all that needs to be stated by this Court. Thus, the majority opinion needlessly wastes much time in discussing, inter alia, the subject of independent impulse.

As 90% of the majority opinion is filled with dicta, I shall also fill my opinion with dicta.

Why should an accused ever get an instruction on independent impulse?

My research reveals that, for Texas law purposes, the theory of independent act or impulse by other than the accused may have actually gained prominence in this Court's decision of *Serrato v. State*, 74 Tex.Cr.R. 413, 171 S.W. 1133 (1914). Judge Harper's discussion of the subject, in the opinion that he authored for the Court, *as it relates to the law of conspiracy, summarized what he had just quoted and stated*: "*It is thus seen* that if the crime committed is not in any way connected with the common purpose and design, but is an independent act of one of the parties, although he did it while engaged in the design, the others would not be legally responsible for such independent act, but if the crime was in furtherance of the common purpose and design, and the facts show that it was such an offense as might have been and should have been contem-

plated by the parties would be the result of the execution of the common design, and it was so executed, then all engaged in the unlawful purpose are equally guilty of the offense, although they, at the time, may have been engaged in some other part of the common purpose and design." (My emphasis.) (171 S.W. at 1139–1140). A clear reading of the opinion should make it obvious to anyone that Judge Harper was not announcing a new defense in the form of independent act or impulse in our law, but was simply pointing out the converse of what he had just stated as to how one can become a conspirator to the commission of an offense. Some cases of this Court since then have, however, turned what Judge Harper stated into a rule of law that when raised by the evidence an instruction on the theory of independent impulse must be given. See the cases cited in the majority opinion. Judge Clinton's majority opinion for the Court continues to perpetrate the myth that independent act or independent impulse is a defense to an accusation.

When independent impulse is injected into the case, it merely negates one or more elements of the offense. Previously, before the theory of independent impulse could be invoked and applied to a case, the facts had to first establish (1) that the defendant entered into an agreement with one or more other persons to commit some unlawful act, and then establish (2) that in carrying out the commission of that act one of the parties to the agreement, other than the defendant, committed another unlawful act that played no part in the original conspiracy. In sum, one of the conspirators in the course of committing the original conspiracy deviated from what he agreed to do and, unknown to the defendant, committed an independent unlawful act. This theory, in principle, is very similar to the doctrine of frolic and detour that is found in the law of torts. See Harper, James and Gray, 5 *The Law of Torts* (1986 edition), Section 26.8. However, this is merely negating an element of the offense.

Judge Clinton states the following: "[S]hould the evidence raise a question whether the offense actually committed was perpetrated in furtherance of the object felony, or was one which should have been anticipated by the accused, a timely requested affirmative instruction on the theory of independent impulse ought to be submitted to the jury." I disagree.

Why, as a matter of law, should the accused ever be entitled to a negating type instruction, such as on the theory of independent act or impulse of another, if the trial judge has properly charged the jury on what it must find before it can return a verdict of guilty, and has also instructed the jury that if it has a reasonable doubt thereof it should acquit the accused? I would answer the question in the negative.

Therefore, I concur only in the result that the majority opinion reaches, that the court of appeals erred in holding that the trial judge erred in refusing the appellant's requested instruction on the theory of independent impulse.