Manuel GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–93–022–CR.

Court of Appeals of Texas, Corpus Christi.

July 21, 1994.

Richard S. Hoffman, Hoffman & Goza, Brownsville, for appellant.

Luis V. Saenz, Dist. & County Atty., John A. Olson, Asst. Dist. & County Atty., Brownsville, for appellee.

Before SEERDEN, C.J., and KENNEDY and DORSEY, JJ.

OPINION

DORSEY, Justice.

Manuel Garcia was convicted of murdering Moises Huerta III by beating him to death with a tire tool on the beach on South Padre Island. He was tried with a co-defendant, Rey Cervantes; both men were found guilty and sentenced to life in prison. Garcia's guilt is predicated on his criminal responsibility for the conduct of another. He brings two points of error: 1) that the trial court improperly refused his requested jury instruction, and 2) that the evidence is insufficient to sustain his conviction. We affirm.

The murder occurred the evening of March 14, 1992, over spring break weekend at Andy Bowie Park, a beach front park near Port Isabel. The beach and park are popular over spring break, and numerous people were there when the assault occurred. A street gang, the Tri–City Bombers, was gathered near the exit of the park in the afternoon and early evening of March 14. Appellant Garcia and his co-defendant Cervantes are members of the gang.

The victim, Moises Huerta, and five friends had gone to the beach in the afternoon and were leaving the beach between 7:00 and 7:30 in the evening. Huerta was driving slowly towards the park exit when several young men approached the car and asked the group if they had any beer. Huerta told them "no" and continued to drive forward. A few yards further up the beach, Huerta stopped the car, got out and walked towards the rear of the car. He was gone a few minutes and one of his passengers, Carlos Torres, got out of the car to see why Huerta was gone. After he got out he saw Huerta being beaten by a group of people behind the car. Torres rushed back and tried to stop the beating. The group began to beat and kick him too. When he realized he could not stop the assault, he managed to get up and run from the group. Torres said Huerta was surrounded by the men beating him.

While Huerta was being beaten, another young man stuck his head into the car and

pointed a gun at the rear seat passengers and ordered them out of the car. They were beaten as they left the car. Other young men were shaking the car and broke the car's windshield.

Alex Richardson, who had been in the back seat of Huerta's car, testified that 15 or 20 people approached the car as he got out. He identified appellant Manuel Garcia as the man who punched him in the stomach and also threatened him. Richardson testified that he was struck a couple of times. Richardson was 15 to 20 feet from Huerta when Garcia punched him. Huerta was being beaten by a single person with a four foot pipe or pole. Huerta was no longer moving. At the time of the attack it was getting dark. Richardson was the only passenger with Huerta who was able to identify any of the men who attacked them.

Eddie Farias, a member of Tri–City Bombers, was with the gang at the beach that day. Although allegedly impaired by Quaaludes at the time of the attack on Huerta, and not participating in it, Farias saw parts of it. He said that members of Tri–City Bombers surrounded the Huerta car and attacked the occupants. He testified that Huerta was struck repeatedly with a tire tool by co-defendant Cervantes, who was the leader of the gang.

Earlier that same evening other beach-goers were attacked as they were leaving Andy Bowie beach in approximately the same location as the attack on Huerta. Diana Martinez testified that she and her family were leaving the beach when they were stopped by three men who asked for help. David Martinez, her husband, stopped the car and got out. He was attacked by a man with what appeared to be a pipe. She saw her husband being hit in the face with the pipe and blood spurting from his face. He was struck a number of times while he was trying to get back into the car and get away.

While David Martinez was being beaten, the car was surrounded by men. One tried to pull a passenger from it, and struck the windshield with what Diana described as a shotgun. She got out of the car to help her husband and was stopped by a man with a gun who pointed it at her and told her she was not going anywhere. Another man came up behind her and told her "I would kill you right now, if I wanted to."

Three or four men were around her husband, hitting him. Diana Martinez identified appellant's co-defendant, Rey Cervantes, as the man who was striking her husband with a pipe. After a while, she heard Cervantes tell the others, "Ya vamos a poner le, ya" which she translated to mean, "Let's go. That's enough." Shortly after that, the men walked away.

Rolando Vasquez, Jr., a passenger in the Martinez car, testified that appellant broke the windshield with what appeared to be a sawed-off shotgun. David Martinez identified Garcia as being part of the group that attacked him and his family, but he did not know what Garcia was doing as part of the group.

Lisa Jimenez testified as to yet another assault as her party was leaving the park around the same time. She and a friend were at Andy Bowie Park March 14, 1992, and started to leave the park about 7 p.m. As they were driving towards the exit to the park they were in a line of cars waiting to get out of the park. Two men approached their truck from the front to prevent them driving forward. One man moved around to the right side and reached in the truck, as if to grab something. She hit his hand, he spit at her, and she threw a bottle at him.

Jimenez identified Cervantes as the man who reached into her truck that day. They went to the police and reported the incident and then drove back to the beach to get a license number of one of the vehicles near where she was assaulted. When they arrived where the incident had occurred, they saw Huerta lying in the sand. Huerta was near where Cervantes had reached into her truck. The area was surrounded by police officers and an ambulance was there. She estimated the time between their incident and returning to the scene at ten to fifteen minutes.

▪ Appellant's second point of error assails the sufficiency of the evidence to support the conviction. We review the sufficien-

cy of the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Olurebi v. State*, 870 S.W.2d 58, 61 (Tex.Crim.App.1994); *Navarro v. State*, 776 S.W.2d 710, 712 (Tex.App.—Corpus Christi 1989, pet. ref'd). We compare the evidence to the instructions given the jury in order to determine whether the finding of guilt is a rational application of the facts to the pertinent law. *Arceneaux v. State*, 803 S.W.2d 267, 271 (Tex.Crim.App.1990).

There is no evidence that appellant Garcia struck the victim. For him to be guilty, he must be criminally responsible for the acts of another. The trial court accordingly instructed the jury:

> All persons are parties to an offense who are guilty of acting together in the commission of an offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

> In this connection, however, the mere presence of a party at the scene of the commission of the offense does not make him a party to the offense. Likewise, mere knowledge that an offense is about to be committed by others will not make him a party to the offense, nor will his knowledge that the offense is being committed by others, or has been committed by others, nor will his failure to give alarm, his silence or inaction, make him a party to the offense.

> A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

> A person is nevertheless criminally responsible for causing the result if the only difference between what he desired, contemplated, or risked is that (1) a different offense was committed; or (2) a different person or property was injured, harmed, or otherwise affected.

The court applied the law to the particular facts of the case as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of March, 1992, in Cameron County, Texas, Manuel Garcia, acting alone or with another, did then and there unlawfully, with the intent to cause serious bodily injury to Moises Huerta, III, said act being: striking Moises Huerta, III with a tire tool, that in the manner of its use and intended use was capable of causing serious bodily injury or death, then you will find the defendant guilty of the offense of Felony Murder, as charged in the indictment.

■ Viewing the evidence in a light favorable to the verdict, *See Olurebi*, 870 S.W.2d at 61, we conclude that Garcia was at the beach with fellow members of the Tri–City Bombers, and participated with them in mass assaults on two distinct parties: The Martinez family and the Moises Huerta group. The assaults occurred in approximately the same place on the beach, in quick succession of one another where cars were driving in line slowly exiting the crowded beach. Garcia was an active participant in both assaults, attacking passengers in the vehicle, while his co-defendant, Cervantes, beat the drivers of both vehicles in the head with a pipe-like object. Huerta died from massive traumatic injuries to the head and David Martinez was struck repeatedly in the head with the weapon.

■ In order for the conviction to stand, the State must prove that Garcia "acting with intent to promote or assist the commission of the offense, solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974). Although pres-

ence at the scene of the crime is insufficient standing alone to infer guilt, presence coupled with a prior agreement that the offense should be committed establishes encouragement and intent to promote the commission of the offense and renders the accused susceptible to a finding of criminal responsibility. *Mayfield v. State,* 716 S.W.2d 509, 514 (Tex.Crim.App.1986). Agreement between the parties may be shown by the acts and words of the parties showing by direct or circumstantial evidence, an understanding and common design to do a certain act. *Mayfield,* 716 S.W.2d at 514; *Segura v. State,* 850 S.W.2d 681, 684 (Tex.App.—Corpus Christi 1993).

Considering the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that the evidence of the two similar assaults established the requisite agreement between Garcia and Cervantes to assault beach-goers the evening of March 14, 1992. A rational jury could also have found that the assaults on Martinez and Huerta were acts clearly dangerous to human life and that Garcia and Cervantes intended to cause serious bodily injury to both victims. Appellant participated in the first assault while Cervantes was attacking Martinez with a deadly weapon. When Cervantes fatally attacked Huerta with the same weapon, Garcia should have appreciated the risk to Huerta. Appellant aided Cervantes in the attacks by his assaults on the passengers by preventing them from aiding the victims. We overrule point two; the evidence is sufficient to support conviction.

■ By point of error one, appellant complains that his requested jury instruction on the law of parties was not given. Garcia requested that the jury be instructed on the law of the parties as follows:

if you find that there was not a common design between Manuel Garcia and another to commit the crime of murder, or if you find that the murder of Moises Huerta, III, was committed by another, acting independently of Manuel Garcia, you must find the defendant Manuel Garcia 'not guilty.' ... If you find that the other defendant alluded to in the testimony, committed murder without Manuel Garcia's

presence or involvement, you must find him not guilty.

The court denied the instruction. The instruction on the law of parties read:

All persons are parties to an offense who are guilty of acting together in the commission of an offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.

In this connection, however, the mere presence of a party at the scene of the commission of the offense does not make him a party to the offense. Likewise, mere knowledge that an offense is about to be committed by others will not make him a party to the offense, nor will his knowledge that the offense is being committed by others, or has been committed by others, nor will his failure to give alarm, his silence or inaction, make him a party to the offense.

In *Mayfield,* 716 S.W.2d at 514–15, the Court of Criminal Appeals discussed when the jury should be instructed on independent impulse which is the instruction appellant sought here. Their conclusion is that "should the evidence raise a *question* whether the offense actually committed was perpetrated in furtherance of the object felony ... a timely requested affirmative instruction ought to be submitted to the jury." *Id.* at 515. However, the Court found that in *Mayfield* no such instruction was required because the defendant claimed that "he never agreed to commit any offense at all...." Garcia's defense was that he was elsewhere and not involved in the offense. The *Mayfield* court further concluded that *Davis v. State,* 651 S.W.2d 787 (Tex.Crim.App.1983) (en banc), controlled. In *Davis,* the Court held that an instruction tracking section 7.02(a)(2) of the Penal Code was sufficient. *Id.* at 792. The trial court's instruction in this case tracked

the Penal Code and gave additional instructions favorable to appellant. We hold that the requested jury instruction was properly denied by the trial court. Point one is overruled.

The judgment is AFFIRMED.