# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00126-CR

**Michael Highfill, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT NO. 0983143, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

A jury found appellant Michael Highfill guilty of capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West 1994). The State did not seek the death penalty and the district court assessed punishment at imprisonment for life. *See id.* § 12.31(a) (West 1994); Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 2001).

Appellant contends the evidence is legally and factually insufficient to sustain the conviction. He also contends the jury charge was defective in numerous respects, his trial counsel was ineffective, the jury received other evidence during deliberations, and he was denied a hearing on his motion for new trial. We overrule these contentions and affirm.

The body of Luis Flores was found in a field in northeastern Travis County on the morning of June 5, 1998. Flores had been shot twice at close range, in the back of the head and the back of the neck. The fatal bullets were .25 caliber, and shell casings of that size were found near the body. Blood-soaked sections from that morning's newspaper were also found at the scene. Flores's

car was later found abandoned in southern Williamson County. More .25 caliber shell casings and bloodstained newspaper were in the car.

It is undisputed that Flores was shot by Rebecca Walton. Walton was a drug abuser and petty criminal who often bought crack cocaine and other drugs from Flores. Flores sometimes arranged for Walton to work as a prostitute to raise money. Appellant had been Walton's constant companion for a month or so prior to the shooting. Appellant was also a drug abuser who supported himself by shoplifting and forging checks, often with the help of Walton and Flores.

Walton was tried for capital murder, convicted of the lesser included offense of murder, and sentenced to imprisonment for sixty years. She later testified as a defense witness at appellant's trial. Walton testified that Flores beat her severely about one week before the shooting and stole money and drugs from her. Immediately thereafter, Walton purchased a .25 caliber pistol through a newspaper classified ad and told a friend, Catherine Goodwin, she was going to kill Flores. Walton pawned the pistol to a person known as "Wild Man" for $20 shortly after purchasing it.

Appellant and Walton spent the evening of June 4 driving around Austin with Flores, shoplifting and taking drugs. Walton asked Flores if he would like to purchase a gun. Flores expressed an interest. Walton had Flores drive to an encampment of homeless persons in northeastern Austin where "Wild Man" could usually be found. Walton redeemed the pistol from "Wild Man," apparently with money supplied by Flores, and showed it to Flores. Walton suggested that she, appellant, and Flores drive to a rural location where Flores could fire the weapon. As they drove there, Walton told Flores how she had purchased the pistol. She told Flores to stop at a

2

convenience store, where she would purchase a newspaper and show him the gun ads. In his written statement to the police, appellant described what happened next:

> [Flores] stopped [at] Braker and 35 at the Diamond Shamrock [to] get a paper. [Walton] asked if I had change to get the paper. I got out and she said she had to use the restroom. As we were walking in together she said come to the bathroom with me.
>
> I said what ever, I thought she had some dope and we were going to smoke it. She looked at me and said are you ready to see a Mexican die. I said what. She said he fucked me over and nobody does that to me. She said she was going to get his dope and money. She said she was going to get it from him while we were in the country. I thought she was going to rob him. When she said you want to see a Mexican die she was smiling. I went out and got the paper and went to the car.
>
> When [Walton] came out she smiled at me. She told [Flores] where to drive, she said that country road where nobody is at. He said yeah like he knew and he drove out there.
>
> They discussed where he should park so no one could see us. When we got there she put her hand out the door and fired a round or maybe two out the window towards the field. He said let me see it or shoot it. She said let's get out of the car. She got out and fired it again towards the field.
>
> I think [Flores] said something, I don't know if he said anything or not. I could hear her spin in the gravel, real quick. I saw a flash and I looked [at] him and it looked [as if] he was trying to get out of the car. He was moving or jumping or something. I don't know if I said anything I saw the flash go off again. When I looked back his head was back and I heard him moan. His head was on the back rest like he passed out or something.

Walton's description of the shooting largely corresponded to appellant's.

Appellant helped Walton remove Flores's body from his car. Walton went through Flores's pockets, taking cash, credit cards, identification, and other items. Portions of the newspaper were used to soak up blood in the car. Walton and appellant drove Flores's car to Jennifer Williams's

3

house in Round Rock, and then to Goodwin's apartment in Austin. At both locations, Walton and appellant told what had happened and went through the items taken from Flores's body. They returned to Williams's house, and Williams helped them dispose of Flores's car. Williams later contacted the police and provided them with the information that led to the arrests of Walton and appellant at Goodwin's apartment on June 6.

Walton testified that she had been very angry at Flores and had planned to scare him, but she denied having any prior intent to kill or rob him. In his statement, appellant professed to be shocked by Walton's actions. He said he helped Walton after the shooting only because he feared for his own life. Goodwin also testified that appellant was upset after the shooting and expressed his fear of Walton.

**Sufficiency of the Evidence**

The indictment alleged that appellant murdered Flores in the course of robbing him. *See* Tex. Pen. Code Ann. § 19.03(a)(2). The court's jury charge included instructions on the law of parties. *See id*. §§ 7.01, .02 (West 1994). The jury was told that a person is criminally responsible for an offense committed by another if, with the intent to promote or assist the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id*. § 7.02(a)(2). The jury was further instructed that if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, even if having no intent to commit it, provided the offense was committed in

4

furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy. *Id.* § 7.02(b).[1]

Appellant contends the evidence is legally insufficient to sustain his conviction on either theory of parties liability presented to the jury. Evidence is legally sufficient to support a criminal conviction if, when all the evidence is viewed in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). In determining whether a defendant participated in an offense as a party, we may look to events before, during, and after the commission of the offense. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986); *Medellin v. State*, 617 S.W.2d 229, 231 (Tex. Crim. App. 1981). While a defendant's mere presence when the offense was committed will not make him a party, it is a relevant circumstance that, with other circumstances, may be sufficient to establish a defendant's status as a party. *Medellin*, 617 S.W.2d at 231.

Goodwin testified that Walton told her she was going to kill Flores because he had beaten and robbed her. Goodwin also testified that appellant was present at her apartment when Walton showed Goodwin the pistol she had purchased. By his own admission, appellant knew on the night of the shooting that Walton was luring Flores to a remote area with the intention of robbing him. Appellant also admitted that, at the convenience store, Walton told him in substance that she intended to kill and rob Flores. Nevertheless, appellant assisted Walton in her ruse by purchasing the

---

[1] Appellant raises several issues regarding these instructions that will be discussed later in this opinion.

5

newspaper in which Walton was purportedly going to show Flores the gun ads and accompanying them to the remote location. After Flores was killed, appellant helped Walton remove the body from the car and steal Flores's belongings. Some of Flores's property was found with appellant's things in Goodwin's apartment. Viewing this evidence in the light most favorable to the verdict, we believe that a rational trier of fact could conclude beyond a reasonable doubt that Walton planned to rob and kill Flores, and that appellant aided Walton in this undertaking with the intent to assist the commission of the crime. *See* Tex. Pen. Code Ann. § 7.02(a)(2). Alternatively, a rational trier of fact could conclude beyond a reasonable doubt that appellant conspired with Walton to rob Flores, that Walton murdered Flores in furtherance of the conspiracy, and that the murder should have been anticipated by appellant given Walton's prior statements. *See id.* § 7.02(b).

Appellant urges that, as a matter of law, he could not be convicted on the theory that he conspired to rob Flores because Walton was acquitted of capital murder in the course of a robbery. Appellant relies on the rule that "inasmuch as two persons are necessary to a conspiracy, if two are tried and one is acquitted, the other must also be acquitted." *Barber v. State*, 764 S.W.2d 232, 234 (Tex. Crim. App. 1988) (quoting *Hustead v. State*, 251 S.W. 1074, 1075 (Tex. Crim. App. 1923)). Appellant's reliance on this rule is misplaced because he was not on trial for criminal conspiracy. *See* Tex. Pen. Code Ann. § 15.02 (West 1994). The existence of the conspiracy to rob Flores was relevant only to establish appellant's guilt as a party to the capital murder of which he was accused. "In a prosecution in which an actor's criminal responsibility is based on the conduct of another, the actor may be convicted on proof of commission of the offense and that he was a party to its commission, and it is no defense . . . that the person for whose conduct the actor is criminally

6

responsible has been acquitted . . . [or] has been convicted of a different offense . . . ." *Id*. § 7.03(2) (West 1994).

The evidence is legally sufficient to sustain the conviction. Point of error one is overruled.

Appellant's second point of error is that the evidence is factually insufficient. When conducting a factual sufficiency review, the evidence is not viewed in the light most favorable to the verdict. Instead, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *See Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict may be set aside only if a finding of guilt beyond a reasonable doubt is clearly wrong and unjust. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd untimely filed).

Appellant relies on Walton's testimony. As previously noted, Walton claimed to have no prior intent to kill Flores. She also testified that she decided to rob Flores only after she killed him. Walton added that appellant did not have any idea that she was going to rob or kill Flores. Appellant urges that Walton's testimony "not only greatly outweighed the State's evidence that Appellant was a party, but so completely exonerated Appellant from her crime that the verdict is clearly wrong and manifestly unjust."

Walton, having already been tried and convicted for her part in the murder, had nothing to lose by attempting to exonerate appellant. Although she claimed that the murder was not planned, she admitted hating Flores and wanting to kill him. She also acknowledged telling appellant at the convenience store that she wanted to see Flores dead. Goodwin, an obviously reluctant State's witness who sought to portray appellant in the best possible light, also testified that Walton spoke of her intent to kill Flores and showed Goodwin the pistol in appellant's presence. The jury, which had the benefit of watching the witnesses testify, could reasonably discount the credibility of Walton's exculpatory testimony and resolve the ambiguities and conflicts in the testimony in the State's favor.

Appellate courts exercise their fact jurisdiction only to prevent a manifestly unjust result. We are not free to reweigh the evidence and set aside a verdict merely because we feel that a different result is more reasonable. *See Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996); *Reina v. State*, 940 S.W.2d 770, 773 (Tex. App.—Austin 1997, pet. ref'd). Due deference must be accorded to the jury's factual determinations, particularly those concerning the weight and credibility of the evidence. *Johnson*, 23 S.W.3d at 9. We may exercise our authority to disagree with the fact finder only when the record clearly indicates that the verdict is wrong and manifestly unjust. *Id.*; *Reina*, 940 S.W.2d at 773. A decision is not manifestly unjust simply because the fact-finder resolved conflicting views of the evidence in the State's favor. *Roise v. State*, 7 S.W.3d 225, 233 (Tex. App.—Austin 1999, pet. ref'd).

The proof of appellant's guilt is not so obviously weak or so greatly outweighed by contrary evidence as to render the jury's verdict clearly wrong and unjust. Point of error two is overruled.

**The Jury Charge**

In a single point of error, appellant complains of multiple errors in the jury charge. None of these alleged errors was preserved by an objection or a specially requested instruction. *See* Tex. Code Crim. Proc. Ann. arts. 36.14, .15 (West Supp. 2001). Appellant must therefore show that the alleged errors were fundamental. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

Appellant first contends the district court erred by instructing on the conspiracy theory of parties liability. *See* Tex. Pen. Code Ann. § 7.02(b). Appellant argues that section 7.02(b) applies only to prosecutions for criminal conspiracy. *See id.* § 15.02. Appellant cites no authority for this argument, which has been rejected by the court of criminal appeals. *See Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989) (section 7.02(b) not limited to prosecutions for criminal conspiracy; properly applied in prosecution for capital murder); *English v. State*, 592 S.W.2d 949, 955 (Tex. Crim. App. 1980). Appellant urges that *Montoya* was erroneously decided. We are not persuaded by appellant's argument, and in any event are in no position to ignore clear precedent.

Appellant further contends that section 7.02(b) should not have submitted to the jury because Walton "was acquitted of every theory of capital murder, including the conspiratorial one." While the record does reflect that Walton was convicted only for the lesser included offense of murder, there is no showing that the jury at Walton's trial necessarily found that she did not conspire

9

with appellant to rob Flores. Moreover, we have already explained that Walton's acquittal of capital murder does not preclude appellant's conviction as a party to that offense. *See* Tex. Pen. Code Ann. § 7.03(2).

Appellant next contends the district court should have instructed the jury on what he calls the "conspirator acquittal" defense. Appellant gleans this "defense" from penal code section 15.02(c)(2), which provides that it is no defense to a prosecution for criminal conspiracy that one or more of the coconspirators has been acquitted, so long as two or more coconspirators have not been acquitted. *Id.* § 15.02(c)(2) (West 1994). Appellant argues that it follows from section 15.02(c)(2) that where there are only two alleged conspirators, and one is acquitted, the other cannot be convicted.[2] Appellant further argues that the district court compounded its mistake by instructing the jury that in a prosecution in which a defendant's criminal responsibility is based on the conduct of another, it is no defense that the person for whose conduct the defendant is criminally responsible has been acquitted or convicted of a different offense.

If section 15.02(c)(2) creates a "conspirator acquittal" defense, it does not apply here because appellant was not on trial for criminal conspiracy. Furthermore, a trial court is under no obligation to instruct on a defensive theory unless the defendant timely requests the instruction or objects to its absence. *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). We perceive no error in the instruction given, which precisely tracked the language of section 7.03(2). *See* Tex. Pen. Code Ann. § 7.03(2).

---

[2] Appellant does not suggest how a "conspirator acquittal" defensive instruction should be worded.

Next, appellant complains that the district court's charge failed to properly apply the law of parties to the facts of the case. The charge contained instructions on the abstract law of parties. The application paragraph then authorized appellant's conviction for capital murder if the jury found that appellant, "either acting alone or with another or others as a party to the offense, as that term is hereinbefore defined," murdered Flores in the course of committing robbery. The application paragraph was sufficient to refer the jury to the abstract instructions so that the jury could properly apply the law of parties to the facts. *Chatman v. State*, 846 S.W.2d 329, 332 (Tex. Crim. App. 1993). It was appellant's burden to request a more explicit application of the law, and in the absence of a timely request or objection no fundamental error is presented. *Id*.

Appellant's next complaint is that the court's charge did not include an instruction on "independent impulse."

> The concept of "independent impulse" is a somewhat elusive one. . . . [I]t seems to embrace the theory that an accused, though he was admittedly intent on *some* wrongful conduct, nevertheless did not contemplate the extent of criminal conduct actually engaged in by his fellows, and thus cannot be held vicariously responsible for their conduct.

*Mayfield v. State*, 716 S.W.2d 509, 513 (Tex. Crim. App. 1986) (footnote omitted). "[S]hould the evidence raise a *question* whether the offense actually committed was perpetrated in furtherance of the object felony, or was one which should have been anticipated by the accused, a timely requested affirmative instruction on the theory of independent impulse ought to be submitted to the jury." *Id*. at 515.

11

Appellant does not refer us to any evidence showing that he and Walton conspired to rob Flores, but raising a question whether the murder was not committed in furtherance of the conspiracy or that the murder should not have been anticipated by appellant. *See id.* In any event, appellant did not request the instruction. *See id.* The district court was under no obligation to give the instruction in the absence of a request. *Posey*, 966 S.W.2d at 62.[3]

Finally, appellant contends the district court should have instructed the jury on the defenses of mistake of fact and duress. *See* Tex. Pen. Code Ann. §§ 8.02(a), .05(a) (West 1994). Once again, no error is presented in the absence of a request for these defensive instructions. *Posey*, 966 S.W.2d at 62.

We have reviewed all of appellant's complaints regarding the district court's jury charge and find no fundamental error. Point of error three is overruled.

### Assistance of Counsel

Appellant's next point of error is that he did not receive effective assistance of counsel at trial. Appellant contends his trial attorneys were ineffective because they (1) did not request an instruction on the "conspirator acquittal" defense; (2) did not object to the section 7.03 instruction; (3) did not request an instruction on independent impulse; (4) did not request instructions on the defenses of mistake of fact and duress; and (5) did not request a more explicit application of the law of parties to the facts of the case.

---

[3] The State argues that because "independent impulse" is not recognized by the penal code, it does not warrant a separate instruction. *See Giesberg v. State*, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998). We do not reach this question.

12

To prevail on a claim of ineffective assistance of counsel at the guilt stage, an appellant must show that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); *see also Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985); *O'Hara v. State*, 837 S.W.2d 139, 143 (Tex. App.—Austin 1992, pet. ref'd). Counsel's performance must be judged in its totality, rather than by isolating individual errors or omissions. *See Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd). We also must avoid the distortions of hindsight, and evaluate counsel's conduct from his perspective at the time of trial. *See Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993). A defendant asserting an ineffective assistance claim must overcome a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

We have already held that the alleged "conspirator acquittal" defense was not applicable here. We have also held that the court correctly instructed the jury pursuant to section 7.03. Counsel cannot be deemed ineffective for failing to request an inapplicable instruction or for failing to object to an unobjectionable instruction.

At a hearing held on this Court's order, appellant's trial attorneys testified that there was no strategic reason for their failure to request an "independent impulse" instruction. As we previously noted, however, appellant does not refer us to any evidence raising this issue. The attorneys were not asked why they did not request instructions on the mistake of fact and duress

13

defenses. One of the attorneys did testify, however, that "this case was tried with the basic strategy of there's not evidence to convict him and that . . . the murder occurred purely as the result of the acts of Rebecca Walton." Counsel could have reasonably concluded that it would be inconsistent with this defense strategy to request instructions implicitly admitting appellant's active involvement in the capital murder, but seeking to excuse that involvement by claiming mistake of fact or duress.

There is also no evidence before us as to why trial counsel did not request a more explicit application of the law of parties to the facts of the case. But as the court of criminal appeals has observed, the law of parties enlarges a defendant's criminal liability and it may be to the defendant's benefit not to have this theory clearly delineated in the application paragraph. *Romo v. State*, 568 S.W.2d 298, 302 (Tex. Crim. App. 1978) (op. on reh'g).

Appellant has not met his burden of demonstrating that trial counsel's performance was outside the wide range of reasonable professional assistance. Point of error four is overruled.

### Jury's Receipt of Other Evidence

"No person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." Tex. Code Crim. Proc. Ann. art. 36.22 (West 1981). Appellant contends this statute was violated when, after the jury had been deliberating for about three hours, a juror opened the door of the jury room and asked the bailiff "who would handle the punishment phase of it." The bailiff, who reported this incident to the district court, said he told the juror, "[I]f it was capital, it would be automatic. If it was anything else, that they would." Twenty minutes later, the jury announced it had reached a verdict.

14

It is error for the bailiff to communicate with the jury about the substance of the case on trial. *Alexander v. State*, 919 S.W.2d 756, 766 (Tex. App.—Texarkana 1996, no pet.). When a juror converses with an unauthorized person, injury is presumed. *Alba v. State*, 905 S.W.2d 581, 587 (Tex. Crim. App. 1995). The presumption is rebuttable if it is shown that the case was not discussed, or that nothing prejudicial to the accused was said. *Id*.

Appellant did not move for a mistrial or request any other relief. *See* Tex. R. App. P. 33.1. Assuming this issue may nevertheless be raised on appeal, any presumption of harm is overcome by the record. During jury selection, both the prosecutor and defense counsel told the prospective jurors that if appellant were to be convicted of capital murder the court would assess an automatic life sentence, but that if appellant were to be convicted of murder the jury would assess punishment within a range of five years to life in prison. Because the bailiff merely repeated what the jurors had already been told during voir dire, it is clear that the bailiff's remark to the juror did not prejudice appellant. Point of error five is overruled.

**New Trial Hearing**

Finally, appellant contends he was improperly denied a meaningful hearing on his motion for new trial. The motion, alleging ineffective assistance of trial counsel, was set for a hearing on March 27, 2000, seventy-three days after it was filed. When the cause was called for the hearing, however, it was learned that appellant had been transferred from the county jail to a prison unit.

Believing it could not proceed in appellant's absence, the court declined to hold the hearing.[4] The motion for new trial was overruled by operation of law two days later. *See* Tex. R. App. P. 21.8(c).

After perfecting his appeal but before the record was filed, appellant asked this Court to suspend the rule 21.8 time limit, abate the appeal, and remand the cause to the district court for a hearing and ruling, citing Texas Rule of Appellate Procedure 2. We initially overruled the motion, but on appellant's motion for reconsideration we granted the motion in part. The appeal was abated for a hearing at which the parties were permitted to adduce evidence relevant to appellant's motion for new trial for inclusion in the appellate record. The order did not permit the district court to rule on the merits of the motion for new trial.

Appellant contends he waived his right to be present at the new trial hearing and that the district court therefore erred by failing to conduct the hearing at the time originally set. Appellant further contends this Court erred by refusing to remand the motion to the district court for an out-of-time ruling. Appellant again urges this Court to remand the cause to the district court for that court to rule on the motion for new trial.

It is error to hear a motion for new trial in the absence of the defendant, but a defendant may waive his right to be present. *Phillips v. State*, 288 S.W.2d 775, 776 (Tex. Crim. App. 1956); *see also* Tex. Code Crim. Proc. Ann. art. 33.03 (West 1989). At the aborted March 27 proceeding, counsel told the court that he "expected [appellant] to be here." When counsel suggested the possibility of waiving appellant's presence, the court stated, "Well, we can't really – we can't hear

---

[4] There is no evidence, and appellant does not contend, that appellant was transferred to prison for the purpose of frustrating his right to a hearing on the motion for new trial.

16

it without him because he ain't here to waive it, his appearance, so I don't know how I can hear it without him being here."  Appellant's counsel replied, "Well, he wouldn't complain if you ordered a new trial.  You could just do that right out of the blue."  This prompted the court to observe, "Well, I understand that, but I bet he would complain, or somebody would complain on his behalf, at least, if we conducted a motion for new trial and had the party without the main celebrant of the party being present."  Counsel responded, "You're right.  I'm being facetious."  No further consideration was given to proceeding in appellant's absence.

Appellant did not waive his right to be present at the hearing of his motion for new trial.  Although the question of waiver came up, appellant's counsel clearly indicated that he was prepared to waive appellant's presence only if the court granted the motion for new trial.  We understand counsel's position below to be that appellant would complain if the motion were considered and overruled in his absence.  In the waiver cases cited by appellant, defense counsel unambiguously requested that the motion for new trial be heard without the defendant's presence, did not request the defendant's presence and made no objection to his absence, or announced ready to proceed without the defendant.  *See Whitaker v. State*, 977 S.W.2d 869, 877 (Tex. App.—Beaumont 1998, pet. ref'd); *Coons v. State*, 758 S.W.2d 330, 339 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd); *Escarcega v. State*, 711 S.W.2d 400, 402 (Tex. App.—El Paso 1986), *pet. dism'd, improvidently granted*, 767 S.W.2d 806, 807 (Tex. Crim. App. 1989).

This Court did not err by refusing to suspend rule 21.8 to permit the district court to act on appellant's motion for new trial.  Appellate courts are not authorized to retroactively suspend the appellate rules to permit a trial court to act on a motion for new trial that has been overruled by

17

operation of law. *State v. Garza*, 931 S.W.2d 560, 563 (Tex. Crim. App. 1996); *see also Oldham v. State*, 977 S.W.2d 354, 359-60 (Tex. Crim. App. 1998). At the time appellant asked this Court to abate the appeal, the appellate record had not been filed, the case had not been briefed, and there was no basis for this Court to conclude that the motion for new trial raised a matter not determinable from the trial record on which appellant was entitled to an out-of-time hearing independent of rule 2. *See and compare Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); *McIntire v. State*, 698 S.W.2d 652, 660-62 (Tex. Crim. App. 1985).

Even if the district court erred by refusing to continue the March 27 hearing in appellant's absence, or even if this Court erred by refusing to abate the appeal for an out-of-time ruling on the motion for new trial, the error has been rendered moot. Appellant was given the opportunity to make a record in support of his motion for new trial. That record was considered by this Court in disposing of appellant's ineffective assistance of counsel claim, the only issue raised in the motion for new trial. No useful purpose would be served by abating the appeal now to permit the district court to rule on the motion. Point of error six is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

18

Filed:   May 17, 2001

Do Not Publish